UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| PAUL J. CURRY, | ) | Civil Action No.: 4:15-cv-3327-BHH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| THE TOWN OF ATLANTIC BEACH, | ) | |
| a political subdivision of the State of | ) | |
| South Carolina, and THE TOWN OF | ) | |
| ATLANTIC BEACH POLICE DEP'T, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his First, Fourth and Fourteenth Amendment rights, false imprisonment, conversion, and abuse of process[1]. Presently before the court is Defendant's Motion for Summary Judgment (Document # 37).   All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.   This report and recommendation is entered for review by the district judge.

## II.    FACTS

Plaintiff and Darnell and Windy Price have a contentious relationship and have filed numerous complaints against each other that do not form the basis for the present action.  However, a background of the contentious nature of these individuals is helpful to understanding the claims underlying this action.  In 2007, Plaintiff ran for Town Council against Windy Price, among other

---

[1]In his response, Plaintiff concedes that this cause of action is subject to dismissal as barred by the South Carolina Tort Claims Act.  Pl. Resp. 2.

individuals. Statement of Candidacy (Ex. 34 to Def. Motion); Pl. Dep. 70-72. Plaintiff became suspicious that Windy Price was making false claims of residency when running against him for Town council. Pl. Dep. II 30-31. Plaintiff also investigated the zoning and licensing of the Price family's place of worship, the CME Church, Pl. Dep. II 32, and he investigated the Prices for alleged violations of the terms of a legal settlement with the Insurance Reserve Fund. Pl. Dep. II 32-33. Plaintiff lost the election to Windy Price, but continued his investigation into the Prices' conduct.

On June 2, 2008, the Plaintiff was arrested for Second Degree Harassment of Windy Price. Arrest Warrant (Ex. 22 to Def. motion). Plaintiff was taking pictures of her while she operated a golf cart without a registration sticker on it. Pl. Dep. II 49; Photo of Windy Price on Golf Cart (Ex. 23 to Def. Motion). These charges were eventually dropped by Windy Price, and the Plaintiff filed a lawsuit against her on March 17, 2009, for abuse of process and malicious prosecution. Civil Action Compl. (Ex. 26 to Def. Motion). The case was eventually dismissed. Order (Ex. 87 to Def. Motion).

On May 31, 2009, Plaintiff filed a police report with Defendants that Darnell Price was following him in his truck in a threatening manner. Harassment Report (Ex. 30 to Def. Motion); Pl. Dep. II 62.

Plaintiff filed a complaint against Windy Price regarding her failure to file a Statement of Economic Interest in the 2007 election. Pl. Compl. to Election Committee (Ex. 35 to Def. Motion); Pl. Dep. II 72.

On November 8, 2009, Plaintiff filed a police report with Defendants alleging that Darnell Price parked his truck on the sidewalk and filmed him in a threatening manner. Harassment Report (Ex. 37 to Def. Motion); Pl. Dep. II 75.

On November 26, 2009, Plaintiff filed another police report alleging Darnell Price was harassing him. Harassment Report (Ex. 38 to Def. Motion); Pl. Dep. II 77.

On December 2, 2009, Darnell Price filed a police report with Horry County Police Department that Plaintiff was driving by their residence taking photographs. Harassment Report (Ex. 40 to Def. Motion). Plaintiff admitted this was occurring but said it was part of his investigation. Pl. Dep. II 80-81.

On January 1, 2010, Plaintiff wrote a letter to then Town Manager William Booker complaining that Darnell Price was stalking and harassing him. Pl. Letter to Booker (Ex. 45 to Def. Motion); Pl. Dep. II 86-87.

On March 7, 2010, Darnell Price filed a police report with the Atlantic Beach Police Department that Plaintiff was following him around and taking pictures of him and his family. Harassment Report (Ex. 50 to Def. Motion); Pl. Dep. II 101-04.

On March 9, 2010, Plaintiff complained to the Election Commission that they did not hear his complaint regarding Windy Price's Statement of Economic Interest. Pl. Letter to Graham (Ex. 51 to Def. Motion); Pl. Dep. II 105.

On March 20, 2010, Darnell Price filed a police report with the Horry County Police Department alleging that Plaintiff was following his family around taking pictures. Plaintiff protested he was not following Price around but rather pursuing his investigation. He admitted he took pictures of the church and Price's vehicle as part of this investigation. Harassment Report (Ex. 53 to Def. Motion); Pl. Dep. II 107.

On March 29, 2010, and March 31, 2010, the Plaintiff wrote two letters to Town Manager William Booker reporting that Windy Price had parked in front of a fire hydrant and that Darnell Price was trespassing on private property. Pl. Letters to Booker (Exs. 56-57); Pl. Dep. II 110-12.

On July 31, 2010, Plaintiff filed a police report with the Town of Atlantic Beach alleging that Darnell Price struck the back of his car as he was driving by. Harassment Report (Ex. 61 to Def.

Motion); Pl. Dep. II 122-23.

On September 12, 2010, Plaintiff called the Horry County Police Department to the Prices'
church for a noise ordinance violation.  Trespassing Report (Ex. 66 to Def. Motion); Pl. Dep. II 131.

On September 5, 2010, Plaintiff complained to the Town of Atlantic Beach that the Prices
were operating golf carts without proper permits. While Police Chief Eric Lewis was on the scene
Darnell Price verbally threatened Plaintiff.  Assault and Battery Report (Ex. 64 to Def. Motion): Pl.
Dep. II 129-30. On September 30, 2010, Police Chief Eric Lewis swore out a warrant and had
Darnell Price arrested for Assault & Battery Third Degree for the events that happened on September
5, 2010.  Warrant (Ex. 65 to Def. Motion); Pl. Dep. II 127.  On October 1, 2010, a Special
Conditions of Bond Order was put on Darnell Price to stay away from Plaintiff's home and
workplace and to have no contact with Plaintiff.  Conditions of Bond on Price (Ex. 70 to Def.
Motion); Pl. Dep. II 141.

In his complaint, Plaintiff takes issue with three arrests.  The first arrest occurred on
November 8, 2010.  On that date, Plaintiff was arrested for First Degree Harassment pursuant to a
warrant issued by the Municipal Judge based on an affidavit submitted by Police Chief Eric Lewis.
Arrest Warrant J-745105 (Ex. 79 to Def. Motion). Arresting officer Eric Lewis cited four specific
incidents in his affidavit leading to the arrest of the Plaintiff:

> Based upon my investigation I have learned that Subject has engaged in
> pattern of harassing behavior, including filming the victims and their children.
> Victim number 1 and the subject where [sic] involved in an altercation on October
> 5, 2010. This altercation was a direct result of the subject's pattern of intentional,
> substantial, and unreasonable intrusion into the private life of the victims. After being
> warned not to harass or conduct surveillance of the Victims the Subject stated that
> he is not breaking any laws and would not stop his behavior.
>
> On October 21, 2010 Subject drove slowly past the victims [sic] residence
> located at [redacted]. While driving by the Subject did initiated [sic] and maintained
> visual contact with the victims and their family. Pointing what appeared to be a video

camera at the victims while laughing. Police report filed incident report number 10101173.

On October 30, 2010, Subject came within 15 feet of victim number 1 while he was attending church at 502 30th Avenue South, Atlantic Beach, SC. Subject was taking video tapping/ [sic] taking pictures of victim. Requesting officer spoke to subject questing [sic] that he refrains [sic] from such behavior. Subject replied that 'I am not going to change my daily routine for them.' Police report filed incident report number 20001195.

On November 7, 2010 the Subject again walked past victims at their church located at 502 30th Avenue South, Atlantic Beach, SC. At which point he began to photograph and video tape the victims. This unreasonable intrusion into the private life of the victims serves no legitimate purpose and causes the victims and would cause a reasonable person in their position to suffer mental or emotional distress. Police report filed Incident report number 10001229.

Arrest Warrant J-745105 (Ex. 79 to Def. Motion).

Following Plaintiff's arrest, a bond of $3,000 was set and posted, which included a "no contact" provision, preventing Plaintiff from contacting the victim or the victim's family. See Order Modifying Bond (Ex. 88 to Def. Motion).[2]

At some point after the bond was issued, Plaintiff saw cars in the parking lot of the Community Center and thought a town meeting was occurring and pulled into the parking lot. As he turned around to leave, his exit was blocked by Darnell Price's vehicle, but he was eventually able to leave. Pl. Dep. II 34-36. The Prices then accused Plaintiff of violating the conditions of his bond. On July 27, 2011, an Order modifying the bond on Plaintiff was issued by Circuit Court Judge Steven H. John. Order Modifying Bond[3] (Ex. 88 to Def. Motion); Pl. Dep. II 182.

_____

[2]It does not appear that the original bond is in the record. However, the order modifying the bond sets forth some of the details of the original bond.

[3]The Town of Atlantic Beach Community Center, where all town meetings were held, was located across the street from the Prices's residence on 32nd Avenue South. Pl. Dep. II 34-35. The modified bond stated, inter alia,:

The Defendant is prohibited from travelling down the portion of 32nd Avenue

At the same time as Plaintiff's arrest on November 8, 2010, Police Chief Eric Lewis also executed a search warrant at Plaintiff's residence and seized numerous items. Search Warrant Aff. and Return (Exs. 123, 127 to Def. Motion).  The Search Warrant authorized Defendant Police to "search apartment looking for any audio and video log being on computer, flash drives, memory card and any audio, video photographic equipment and all documents and or files relating to Darnell Price, Wendy [sic] Price and their children." Search Warrant (Ex. 123 to Def. Motion).  As a result of the execution of the Search Warrant, Defendant Police seized approximately 217 items from Plaintiff's residence ranging from Plaintiff's camcorder, batteries and charger to blank digital media, Plaintiff's computer and software tutorial discs.  Search Warrant Return (Ex. 127).

William Booker was the Town Manager during the time of this arrest. List of Town Managers (Ex. 1 to Def. Motion); Pl. Dep. I 53.

Plaintiff's second arrest giving rise to this action occurred on November 21, 2011.  On that date, Plaintiff was arrested for second degree harassment of Darnell Price by Officer John Jackson. Arrest Warrant J-745160 (Ex. 100 to Def. Motion).  Plaintiff stated that Darnell Price was watching a public meeting from his vehicle across the Highway from the meeting site. Plaintiff claims he drove by Darnell Price in his vehicle while turning in a parking lot but never stopped his car.  Pl. Dep. I 39. He then subsequently drove back to the meeting and informed everyone that Darnell Price

_____

South, Atlantic Beach, South Carolina which is located west of U.S. Highway 17; PROVIDED HOWEVER, the Defendant may attend scheduled public meetings held at the Atlantic Beach Community Center, located at 1010 32nd Avenue South and may remain present during those scheduled meetings.  Defendant must leave once any scheduled meeting adjourns and must leave 32nd Avenue South, Atlantic Beach, SC, west of U.S. Highway 17 immediately.

Order Modifying Bond (Ex. 88 to Def. Motion).  The order also provided that "any violation of the terms and conditions of this bond must be brought before the Honorable Steven H. John as soon as practicably possible."  Id.

was watching them. Pl. Dep. I 40.  After leaving the meeting he drove by the town hall and saw Darnell Price speaking to Officer John Jackson and Town Manager Benny Webb. He was arrested shortly afterwards. Pl. Dep. I 42-43.

Officer Jackson averred that he was informed by Town Manager Benny Webb of the Order by Judge John concerning the Plaintiff and Darnell Price. Based on this information and his personal observations of the Plaintiff's conduct, he decided to issue a Uniform Traffic Ticket for misdemeanor Second Degree Harassment and arrested Plaintiff.  Jackson Affidavit (Ex. 124 to Def. Motion).  Plaintiff recorded the arrest on an audio recorder, during which the arresting officer can be heard saying "Mr. Curry, it's a bunch of bullshit, but I'm sorry, but I have to do my job."  Audio Recording entitled "Ofc. Jackson arresting Paul–Warrant WS311955; ARREST; 11-21-11 (3)" (Ex. C. to Pl. Resp.). The following day Officer Jackson procured a warrant dated November 22, 2011, signed by Judge Chevron Scott for the same conduct. Arrest Warrant J-745160 (Ex. 100 to Def. Motion).

Judge John's Order modifying the conditions of bond for Plaintiff on July 27, 2011, after the initial arrest by Eric Lewis created some confusion about the appropriate jurisdiction for Plaintiff's harassment charges. Order Modifying Bond (Ex. 88 to Def. Motion); Rule to Show Cause Order (Ex. 101 to Def. Motion); Order Dismissing with Prejudice (Ex. 117 to Def. Motion); Pl. Dep. II 214. The cases were ultimately consolidated and sent to Magistrate's Court.  Order (Ex. 115 to Def. Motion).

On February 18, 2013, the parties agreed to continue the case to the May 1, 2013, term of court. The order incorporating this agreement also removed all of the bond conditions on Plaintiff and ordered that all of the outstanding Rules to Show Cause in this matter were to be dismissed with prejudice.  Order (Ex. 115 to Def. Motion); Pl. Dep. II 239-40. On July 9, 2013, Magistrate Judge Margie Livingston issued a final order dismissing all of the charges against Plaintiff and ordering

all of his seized items returned. Order Dismissing with Prejudice (Ex. 117 to Def. Motion).

Plaintiff testified that he had made no effort personally to retrieve his seized property but left that to his attorney. Although he produced a copy of the order for Officer John Jackson to show that the bond conditions had been lifted, he did not request any of his property be returned. Pl. Dep. I 68-69. On September 3, 2015, the seized property in Defendants' evidence locker was returned to Plaintiff. Item Receipt (Ex. 121 to Def. Motion). Plaintiff asserts that many items seized were not returned and many items returned were not included on the search warrant return. Pl. Dep. I 85, 95-96.

Plaintiff's third arrest at issue occurred on November 29, 2012, when he was arrested by an Horry County Police Officer for Harassment First Degree for allegedly videotaping Darnell Price in his office from outside the Town Hall. HCPD Arrest (Ex. 108 to Def. Motion). The warrant was signed by County Magistrate Judge Christopher Arakas. HCPD Arrest (Ex. 108 to Def. Motion). After a preliminary hearing, the case was dismissed as the Magistrate Judge determined it was a bond matter. Notice of Dismissal (Ex. 113 to Def. Motion).

As part of Plaintiff's investigative efforts into the practices of the Town of Atlantic Beach's public officials, Plaintiff has made numerous Freedom of Information requests and has filed numerous lawsuits with respect to the responses received from Defendants. As of Plaintiff's deposition, he had five FOIA-related lawsuits pending. Pl. Dep. 74. In one particular instance, on January 31, 2012, Plaintiff was assaulted by then-Town Manager Benny Webb at the Town Hall relating to a request for public documents pursuant to SC FOIA. Audio and Video Recording (Ex. C to Pl. Resp.). During the incident, Mr. Webb threatened to "take care' of Mr. Curry and that he would "knock the living shit out of" him, and called him a "racist" and "a pedophile." Id.

## III.    STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, the moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Id. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324.  Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

### A.    42 U.S.C. § 1983

Plaintiff brings his federal claims pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his First, Fourth and Fourteenth Amendment rights.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

 Municipalities and other local governing bodies are included among those "persons" who may be sued under § 1983.  Monell v. Department of Social Services, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  However, a county or city cannot be liable under § 1983 pursuant to respondeat superior principles. See Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999) ("municipalities are not liable pursuant to respondeat superior principles for all constitutional violations of their employees simply because of the employment relationship") (citing

-10-

Monell, 436 U.S. at 692–94). In other words, a municipality may not be held liable under § 1983 solely because it employs the tortfeasor; rather, a plaintiff must identify a municipal policy or custom that caused the plaintiff's injury. Board of County Commissioners v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); McMillian v. Monroe County, Alabama, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) ("If the sheriff's actions constitute county 'policy,' then the county is liable for them."); Knight v. Vernon, 214 F.3d 544, 552–53 (4th Cir.2000).

To establish municipal liability, a plaintiff must show that the municipality's policies or customs caused the constitutional violation. McMillian v. Monroe County, 520 U.S. 781, 784, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997).   Plaintiffs must identify a specific policy or custom "fairly attributable to the municipality as its own" that caused the alleged Constitutional violation and allege that as a result of deliberate conduct, the municipality was the "moving force" behind the injury. Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987); Board of County Commissioners v. Brown, 520 U.S. 397, 403 (1997)."The challenged policy or custom cannot merely be the abstract one of violating citizens' constitutional rights." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).  It is important that litigants "identify the offending municipal policy with precision."  Id.

"While municipal 'policy' is found most obviously in municipal ordinances, regulations and the like which directly command or authorize constitutional violations… it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987) (internal citations omitted) (citing Monell, 436 U.S. at 661, 694, 98 S.Ct. at 2020, 2037; Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 1301, 89 L.Ed.2d 452 (1986)).

"'Official policy' in the relatively narrow sense of discrete, consciously chosen courses of action by 'policymakers' is not the only basis for imposing municipal liability." Id. "'Custom, or

usage,' in the exact language of Sec. 1983, may also serve." Id. (citing Monell, 436 U.S. at 690-91, 98 S.Ct. at 2035-36). "And the existence of such a 'custom or usage' may be found in the 'persistent and widespread … practices of [municipal] officials [which] [a]lthough not authorized by written law, [are] so permanent and well-settled as to [have] the force of law." Id. (citing and quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 1613-14, 26 L.Ed.2d 142 (1970)). Defendants' Monell liability will be discussed with respect to each of the claims alleged by Plaintiff to the extent necessary.

### 1.     Fourth Amendment Violations

Plaintiff asserts a cause of action for false imprisonment (third cause of action), in which he alleges that he was arrested on November 8, 2010, November 21, 2011, and November 29, 2012[4], on "unsupported and unsubstantiated charges." Compl. ¶¶ 67-77. He also asserts a cause of action for a fourth amendment violation (sixth cause of action). in which he alleges that his arrest on November 8, 2010, and the subsequent search of his apartment were not supported by probable cause. Compl. ¶¶ 120-133.

With respect to his arrests, Plaintiff appears to assert a "Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort. To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (citing Lambert v. Williams, 223 F.3d 257, 261 (4th Cir.2000), Durham v. Horner, 690 F.3d 183, 188 (4th Cir.2012)) (internal citations

---

[4]In his complaint, Plaintiff references a "December 1, 2012" arrest. The arrest appears to have occurred on November 29, 2012, and the warrant was obtained on December 1, 2012. HCPD Arrest (Ex. 108 to Def. Motion).

omitted).

All three of the arrests at issue were terminated in Plaintiff's favor. The first two arrests were consolidated, and a hearing was held on July 9, 2013, in which the Magistrate Judge ruled that the charges were not supported by probable cause and were dismissed with prejudice. An order memorializing that ruling was signed on August 7, 2013. Order Dismissing with Prejudice (Ex. 117 to Def. Motion). The November 29, 2012, arrest was dismissed during the Preliminary Hearing on January 23, 2013, because the Magistrate Judge determined it was a bond matter. Notice of Dismissal (Ex. 113 to Def. Motion).

Although Magistrate Judge Livingston ultimately found that the first two warrants lacked probable cause, such a finding is not determinative on the issue of whether the arresting officer, Police Chief Eric Lewis, violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures. Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000). In explaining why the absence of probable cause is not determinative, the Supreme Court has observed:

> [I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citing Malley v. Briggs, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Here, Plaintiff argues that his November 8, 2010, arrest was unreasonable because it followed from a warrant affidavit that contained incorrect information, which was known to the arresting officer, Police Chief Eric Lewis. Probable cause "exists when, 'at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense.'" United States v. Johnson, 599 F.3d 339,

346 (4th Cir.2010) (quoting United States v. Manbeck, 744 F.2d 360, 376 (4th Cir.1984)). To establish that the warrant was unsupported by probable cause, Plaintiff must show that Lewis "deliberately or with reckless disregard for the truth made material false statements in his affidavit, or omitted from the affidavit material facts with the intent to make the affidavit misleading." Miller v. Prince George's County Md., 475 F.3d 621, 627 (4th Cir. 2007) (internal citations omitted). "'Reckless disregard' can be established by evidence that an officer acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Id. (internal citations omitted).  "With respect to omissions, 'reckless disregard' can be established by evidence that a police officer 'failed to inform the judicial officer of facts [he] knew would negate probable cause.' . . . A plaintiff's 'allegations of negligence or innocent mistake' by a police officer will not provide a basis for a constitutional violation. Id. (internal citations omitted).

Plaintiff cites several inaccuracies in Chief Lewis's affidavit.  Plaintiff argues that Chief Lewis's affidavit narrative concerning the incident on October 5, 2010, is inaccurate.  In his affidavit, Chief Lewis describes an altercation between Plaintiff and Darnell Price, which Chief Lewis described as a direct result of Plaintiff's "intentional, substantial and unreasonable intrusion into the private life of the victims."  Arrest Warrant J-745105 (Ex. 79 to Def. Motion). Plaintiff argues that Chief Lewis neglected to include in his affidavit the fact that Darnell Price was arrested on September 30, 2010, for Assault and Battery 3rd Degree against Plaintiff during an incident which occurred on September 5, 2010 in the presence of Chief Lewis.  Arrest Warrant J-745098 (Ex. 65 to Def. Motion).  As a condition of Darnell Price's bond, he was ordered to refrain from contacting Plaintiff.  Conditions of Bond (Ex. 70 to Def. Motion).

Plaintiff testified in his deposition that, despite Chief Lewis's averment that the altercation between Plaintiff and Darnell Price on October 5, 2010, was the direct result of Plaintiff's "intentional, substantial and unreasonable intrusion into the private lives of the victims," the contact between the two was actually initiated by Price, who had been ordered to refrain from contacting Plaintiff. Pl. Dep. II 142-43. Plaintiff called the police, and an incident report was created by the responding officer, who stated in the report that he spoke to both Plaintiff and Price and listened to an audio recording revealing that Price did initiate contact with Plaintiff. Incident Report 10-5-10 (Ex. 72 to Def. Motion). Plaintiff argues that Chief Lewis had reckless disregard for the inaccuracy of his statement that the altercation on October 5, 2010, was a direct result of Plaintiff's actions because the incident was documented in an incident report created by a Town of Atlantic Beach Police Officer.[5]

Plaintiff also argues that Chief Lewis's account of the incident on October 21, 2010, is inaccurate. Chief Lewis indicated that Plaintiff allegedly drove slowly passed Darnell Price's residence and pointed a video camera at the Prices and laughed at them. Arrest Warrant J-745105 (Ex. 79 to Def. Motion). Although Chief Lewis references an incident report in his affidavit, no incident report for October 21, 2010, has been produced by Defendants. Defendants did, however, produce a Voluntary Statement provided by Plaintiff to the Town of Atlantic Beach Police Department, in which Plaintiff tells a different story. Pl. Voluntary Statement (Ex. 74 to Def. Motion). Plaintiff's statement indicates that as he was driving home along Thirtieth Avenue onto Thirty-First Avenue, he saw Darnell Price seated on the front steps of a restaurant pointing a cell phone at him and laughing. Id.

---

[5]The undersigned notes that Chief Lewis references incident reports for all of the incidents upon which he relied in obtaining the warrant except for the October 5, 2010, incident. Arrest Warrant J-745105 (Ex. 79 to Def. Motion).

Plaintiff next argues that Chief Lewis's statement regarding the October 30, 2010, incident contains a false statement. Plaintiff argues that Chief Lewis references an incident on October 30, 2010, during which Plaintiff filmed Darnell Price near his church, and incident report number 10001229, see Arrest Warrant J-745105 (Ex. 79 to Def. Motion), although no such incident report has been found. Chief Lewis stated that, after being asked to refrain from such conduct, Plaintiff replied "I am not going to change my daily routine for them." Arrest Warrant J-745105 (Ex. 79 to Def. Motion). An incident report dated October 31, 2010, addresses an incident similar to the facts referenced by Chief Lewis in his affidavit, and Plaintiff believes this is the incident upon which Chief Lewis intended to rely. Harassment Report (Ex. 76 to Def. Motion).[6] However, that incident report provides that the responding officer could not locate Plaintiff to speak to him about the incident. Id. Therefore, Plaintiff argues, Chief Lewis falsely stated in his affidavit that Plaintiff said he was not going to change his daily routine.[7]

In sum, Plaintiff presents sufficient evidence to create an issue of fact as to whether Chief Lewis "deliberately or with reckless disregard for the truth made material false statements in his affidavit, or omitted from the affidavit material facts with the intent to make the affidavit misleading" such that the arrest made pursuant to that warrant was unsupported by probable cause. Miller, 475 F.3d at 627.

With respect to the arrests on November 21, 2011, and November 29, 2012, as well as the

---

[6] The incident report indicates that Darnell Price stated that Plaintiff violated a no contact order, but Price was unable to produce a copy of the order. Harassment Report (Ex. 76 to Def. Motion).

[7] Finally, while Plaintiff does not contest the accuracy of Chief Lewis's statement regarding the November 7, 2010, incident, he notes that the incident report was not created until March 8, 2011, and was entered not by the responding officer but by Chief Lewis. Harassment Report (Ex. 78 to Def. Motion).

search warrant executed on November 8, 2010, Plaintiff does not point to evidence supporting a lack of probable cause for § 1983 purposes other than the fact that Magistrate Judge Livingston found the November 8, 2010, search warrant and the November 21, 2011, arrest to be unsupported by probable cause, and another Magistrate Judge dismissed the November 29, 2012, arrest as a bond matter. As set forth above, this is insufficient to support a constitutional violation claim. Thus, an issue of fact exists only with respect to the arrest by Chief Lewis on November 8, 2010.

However, Chief Lewis is not a party to this action. Therefore, to hold either of the Defendants liable for his actions, Plaintiff must show that Chief Lewis acted pursuant to a policy or custom of Defendants. As stated above, Plaintiff must first identify the specific policy or custom "fairly attributable to the municipality as its own" that caused the alleged Constitutional violation. Spell, 824 F.2d at 1387. Plaintiff argues that he has properly identified a policy or custom in his complaint ("Plaintiff believes that such allegations are, in fact contained in Plaintiff's Complaint."), but that Defendants have failed to properly recognize it ("Defendants exhibit a gross misapprehension of the allegations contained in the Complaint, as well as Plaintiff's testimony during his deposition."). Pl. Resp. 21-22. However, his identification of the policy or custom in his response is vague: "Plaintiff is of the opinion that the allegations of a concerted, calculated conspiracy, would suffice to put Defendants on notice of the allegations commensurate with the Monell standard." Pl. Resp. 21. He states that Defendants did correctly identify one of Plaintiff's allegations (presumably one of Plaintiff's allegations of a policy or custom) that "public officials attempted to intimidate him from continuing to ask for documents, observe town activities, and document these activities." Pl. Resp. 22. Thus, it appears that Plaintiff is asserting that Defendants had a custom of preventing him from investigating the activities of the town.

"A municipal custom may arise if a practice is so persistent and widespread and so permanent

-17-

and well settled as to constitute a custom or usage with the force of law." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (internal citation omitted).  "Under this theory of liability, a city violates § 1983 if municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 402 (4th Cir. 2014) (citing Spell, 824 F.2d at 1389).  "Prevailing under such a theory is no easy task. . . . Sporadic or isolated violations of rights will not give rise to Monell liability; only 'widespread or flagrant' violations will."  Id. at 402-03.  Here, the custom identified by Plaintiff is directed specifically at him–he asserts that Defendants had a custom of preventing him from investigating the town.  Clearly, this is not "widespread."  As set forth above, Plaintiff creates an issue of fact of false arrest only as to one arrest.  Although he points to other arrests, he fails to present sufficient evidence to show that they were unconstitutional.  Accordingly, Plaintiff fails to present sufficient evidence to establish a custom by Defendants that caused an injury.

To the extent Plaintiff relies on an official policy to establish Monell liability, a municipality may create an official policy by making a single decision regarding a course of action in response to particular circumstances when the decision maker is the municipality's governing body, a municipal agency, or an official possessing final authority to create official policy. Pembaur, 475 U.S. at 481, 106 S.Ct. 1292; Spell, 824 F.2d at 1387.  "[T]o determine which officials possess final policymaking authority for the allegedly unconstitutional action in question, we must look to 'the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law.'" Id. (quoting Jett v. Dallas Independent Sch. Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). Here, Plaintiff points to the Town of Atlantic Beach Police Department's Policies and Procedures Manual, which provides that

The general administration and control of the Police Department is vested in the

-18-

> Police Chief, who is ultimately responsible for the efficiency and good conduct of the entire organization. The Police Chief in the exercise of his duties shall have the responsibility and power to prescribe, promulgate, and enforce rules and regulations for the governing body, which shall, however, not be inconsistent with the laws of the county or the state.[8]

From this language, it appears that Chief Lewis possessed final policymaking authority. However, "not every decision by every municipal official will subject a municipality to section 1983 liability." Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000)(quoting Pembaur, 475 U.S. at 481, 106 S.Ct. 1292). "[E]pisodic exercises of discretion in the operational details of government" do not create policy. Spell, 824 F.2d at 1386. Here, Chief Lewis was not acting in any policymaking role when he arrested Plaintiff. Rather, he was simply acting in the same role as any other police officer, by swearing out an affidavit for an arrest warrant and arresting Plaintiff. Therefore, Plaintiff fails to show that Chief Lewis's arrest of him created policy sufficient to establish liability on the part of Defendants.

For these reasons, summary judgment should be granted with respect to Plaintiff's false imprisonment claims arising from the November 8, 2010, November 21, 2011, and November 29, 2012, arrests and Plaintiff's Fourth Amendment violation claim arising from the execution of the November 8, 2010, search warrant.

### 2.    First Amendment

Plaintiff alleges that Defendants violated his First Amendment rights by arresting him "for harassment and stalking type offenses, relating to his involvement in investigating the corruption and improprieties of the public officials in Defendant Town," and by arresting him "for attempting to attend a town council meeting which was open to the public" and by "threatening and attempting to

---

[8]Plaintiff did not include the Policies and Procedures Manual as an exhibit. However, Defendants have not disputed the accuracy of this language.

intimidate Plaintiff for requesting public information, pursuant to the Freedom of Information Act."
Compl. ¶¶ 102, 118. Plaintiff alleges that these actions were taken by Defendants for the ulterior
purpose of driving Plaintiff from the Town of Atlantic Beach and preventing him from continuing
his efforts "to expose the wrongful acts being committed by the public officials of Defendant Town,"
in violation of his "First Amendment rights to free speech, to peaceably assemble and petition the
government for a redress of grievances." Compl. ¶¶ 116-17.

In essence, Plaintiff argues that Defendants violated his First Amendment rights by
preventing him from investigating the actions of public officials within the Town of Atlantic Beach
and disclosing his findings. As an initial matter, Plaintiff's allegation that he was arrested for
attempting to attend a town council meeting is not supported by the evidence. Plaintiff's second
arrest occurred after Plaintiff left a public meeting on November 21, 2011, when he was arrested for
second degree harassment for driving slowing through a parking lot in which Darnell Price was
parked. Arrest Warrant J-745160 (Ex. 100 to Def. Motion); Pl. Dep. I 39-43. Plaintiff fails to point
to evidence that he was arrested for attending or attempting to attend a public meeting. His first
arrest, on November 8, 2010, as averred by Chief Lewis, occurred as a result of Plaintiff filming or
photographing Darnell Price or his family on several occasions. Arrest Warrant J-745105 (Ex. 79
to Def. Motion). His third arrest, on November 29, 2012, as averred by an HCPD officer, occurred
as a result of Plaintiff videotaping Darnell Price in his office from outside the Town Hall. HCPD
Arrest (Ex. 108 to Def. Motion). These two arrests, then, arose out of what Plaintiff characterizes
as his investigative activities. Plaintiff has posted recordings of many of his findings on a
youtube.com channel, "wd4edu." See https://www.youtube.com/user/wd4edu/videos (last visited
Jan. 6, 2017).

The First Amendment right to free speech includes the right to be free from retaliation by a

public official and prohibits government officials from subjecting an individual to "retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). Retaliatory acts place informal restraints on speech that allow the government to "produce a result which [it] could not command directly." Perry v. Sindermann, 408 U.S. 593, 597 (1972). A plaintiff seeking to recover on a First Amendment retaliation claim must prove the following elements: (1) he engaged in protected First Amendment speech; (2) the defendants took some action that adversely affected his First Amendment rights; and (3) there was a causal relationship between his protected activity and the defendant's conduct. Constantine v. Rectors and Visitors of George Mason Uni., 411 F.3d 474, 499-500 (4th Cir.2005) (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir.2000)).

The initial inquiry here is whether Plaintiff's conduct amounted to "speech." "Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This, of course, includes discussions of … forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes." Mills v. Alabama, 384 U.S. 214, 218-19 (1966). "There is no question that speech critical of the exercise of the State's power lies at the very center of the First Amendment." Gentile v. State Bar of Nevada, 501 U.S. 1030, 1034-35 (1991). Thus, speech about the public officials in the Town of Atlantic Beach is protected speech. However,

> [a]lthough "speech" does not have to be spoken to be protected under the first amendment, see, e.g., Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (flag burning is protected "speech" under the first amendment), the Supreme Court has repeatedly rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968).

Dennison v. County of Frederick, VA, 921 F.2d 50, 53-54 (4th Cir. 1990).  In Dennison, the Fourth Circuit held that no First Amendment violation occurred where the plaintiff was terminated from employment for his "strict enforcement of the building code" because "at most, the . . . case involves a dispute over a general course of conduct, not the expression of any idea or opinion."  Id. at 54. Later, in Maciariello v. Sumner, 973 F.2d 295, 298-99 (4th Cir. 1992), the Fourth Circuit, relying on Dennison, held that the plaintiffs' investigation constituted conduct and not speech:

> We easily conclude that the investigation itself was not "speech."  The investigation did not express, and was not intended to express, anything to anyone; its central feature was secrecy. Rowell and Maciarello deliberately chose not to speak, and they hid their activities so that those activities would not convey a message to an observer. Though they claim that they intended to speak out eventually, their intention expresses nothing.

Id.  The court further held that the plaintiffs did engage in protected speech "in a much more narrow sense" when they discussed their suspicions arising out of the investigation which a judge.  Id.  Here, Plaintiff did not engage in a secret investigation, but openly investigated the activities of various public officials by following them, recording their activities, and requesting and studying public documents.  Further, he did not have future plans to engage in speech relating to his investigations, but frequently disclosed his "findings" to the public through the internet and complaints to law enforcement.[9]  His disclosures clearly constitute speech as contemplated by the First Amendment. It is not as clear whether his investigative activities alone qualify as such.  Nevertheless, because Plaintiff's investigative activities and disclosures of information to the public were ongoing and concurrent, when taken as a whole the conduct amounts to speech under the First Amendment.

The next question is whether Defendants took some action that adversely affected Plaintiff's

---

[9] Plaintiff asserts in his response that he also provided information to local media outlets, Pl. Resp. 22-23, but does not provide specific evidence in support.

First Amendment rights. Because an issue of fact exists as to whether Chief Lewis had probable

cause to arrest Plaintiff on November 8, 2010, likewise, an issue of fact exists as to whether Chief

Lewis violated Plaintiff's First Amendment rights by arresting him for engaging in protected speech.

The Supreme Court has not expressly addressed whether a right exists under the First Amendment

to be free from a retaliatory arrest otherwise supported by probable cause. In Reichle v. Howards,

132 S. Ct. 2088 (2012), the Supreme Court declined to address the question of "whether a First

Amendment retaliatory arrest claim may lie despite the presence of probable cause the support the

arrest," electing instead to address only "whether clearly established law at the time of [the

plaintiff's] arrest so held" for qualified immunity purposes.[10] Id. at 2093. The Court held that it "has

never recognized a First Amendment right to be free from a retaliatory arrest that is supported by

probable cause," and, thus, no such right was clearly established at the time of the Plaintiff's arrest.

Id. Recently, the Fourth Circuit noted that "[s]ince the Reichle decision, no such right has been

recognized, so the Reichle principle is fully controlling here." Pegg v. Herrnberger, — F.3d —, No.

15-1999, 2017 WL 35722, at *4 (4th Cir. Jan. 4, 2017). The Pegg court held that "the probable

cause inherent in Pegg's violation . . . defeats his First Amendment retaliatory arrest claim." Id.

Therefore, because Plaintiff has failed to present sufficient evidence to create an issue of fact as to

whether his second and third arrests, discussed above, lacked probable cause, his First Amendment

claim with respect to those arrests fails.

     Finally, as to Plaintiff's first arrest, Plaintiff must show a causal relationship between his

protected activity and the Defendants' conduct. To establish this causal connection, a plaintiff in a

---

[10]The Supreme Court has held that a municipality has no qualified immunity from liability
for its constitutional violations. Owen v. City of Independence, 445 U.S. 622, 662, 100 S.Ct.
1398, 1421, 63 L.Ed.2d 673 (1980).

retaliation case must show, at the very least, that the defendant was aware of him engaging in protected activity. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir.1998). "Knowledge alone, however, does not establish a causal connection" between the protected activity and the adverse action. Price v. Thompson, 380 F.3d 209, 213 (4th Cir.2004). "There must also be some degree of temporal proximity to suggest a causal connection." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 501 (4th Cir. 2005) (finding four months sufficient to satisfy causal connection requirement). Because Chief Lewis arrested Plaintiff within one day to one month of Plaintiff's recording and/or photographing of Darnell Price and his family, as relied upon in the affidavit, sufficient evidence exists to create an issue of fact with respect the causation element of his First Amendment claim.

However, for the same reasons discussed above as to Plaintiff's Fourth Amendment claims, Plaintiff also fails to present sufficient evidence to establish Monell liability on the part of Defendants. Therefore, summary judgment is appropriate on Plaintiff's First Amendment claim.

### 3.     Fourteenth Amendment

Plaintiff alleges a cause of action for violation of the Fourteenth Amendment by generally repeating the various allegations set forth elsewhere in the complaint. Two types of claims generally arise out of the Fourteenth Amendment: due process and equal protection claims. The Due Process Clause of the Fourteenth Amendment states that "No state shall ... deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To the extent Plaintiff has alleged a due process or equal protection claim, he has failed to present sufficient evidence to create a genuine dispute of fact as to those claims and, thus, summary judgment is appropriate.

-24-

**B.    State Law Claims**

If the district judge accepts this report and recommendation, the original federal jurisdiction claim will be dismissed and the only remaining claim will be Plaintiff's state law claims. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." <u>Shanaghan v. Cahill</u>, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). <u>See</u> <u>also</u>, <u>e.g.</u>, <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); <u>Revene v. Charles County Comm'rs</u>, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the district judge decline to retain jurisdiction over Plaintiff's state law claims.

**V.    CONCLUSION**

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 37) be granted on Plaintiff's federal claims, that the district judge decline to exercise jurisdiction over the state law claims, and that this case be dismissed in its entirety.

    s/Thomas E. Rogers, III
    Thomas E. Rogers, III
    United States Magistrate Judge

January 31, 2017
Florence, South Carolina